IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| NASDAC GROUP MANAGEMENT CONSULTANCIES, a limited liability company, and JONES BROADCASTING, a Wyoming limited liability company,<br><br>Petitioners,<br><br>v.<br><br>CLUB SWAN, LLC, doing business as CLUB SWAN; CLUB SWAN PARTNERS, a dba of AU Card; CHRISTOPHER J. SCANLON, an individual; AU CARD LLC; AURAE LIFESTYLE a dba of AU CARD LLC; PMA MEDIA GROUP, INC.; REINER VANOOTEGHEM, an individual; NEIL WEEKS, an individual; JOHN KERR, an individual; AU CARD LTD, dba as AU CARD LLC,<br><br>Respondents. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR JURISDICTIONAL DISCOVERY**<br><br>Case No. 2:23-cv-00569-RJS-CMR<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Cecilia M. Romero |

Before the court are Defendants' Motion to Dismiss,[1] Plaintiffs' Motion for Jurisdictional Discovery,[2] and Plaintiffs' Motion for Leave to File an Amended Complaint.[3] For the reasons explained below, the court GRANTS Plaintiffs' Motion for Jurisdictional Discovery and DENIES without prejudice Defendants' Motion to Dismiss and Plaintiffs' Motion to Amend.

---

[1] Dkt. 28, *Defendants Club Swan, LLC, AU Card LLC, Christopher James Scanlon, AU Card Ltd., and PMA Media Group, Inc.'s Motion to Dismiss Plaintiffs' Complaint* (*Motion to Dismiss*).

[2] Dkt. 35, *Plaintiffs' Motion for and Memorandum in Support of Jurisdictional Discovery* (*Motion for Discovery*).

[3] Dkt. 50, *Plaintiffs' Motion for Leave to File Amended Complaint and Memorandum in Support of Motion to Amend Complaint* (*Motion to Amend*).

## BACKGROUND[4]

This case arises out of NASDAC Group Management Consultancies' (NASDAC's) desire to offer its customers a community-branded, global Visa/Mastercard platform compliant with the regulations of the United States and other foreign countries.[5] Reiner Vanooteghem, a management consultant for providing payment solutions compliant with both European and United States regulations, recommended NASDAC use AU Card Ltd.'s (AU Card's) platform for its payment needs.[6] AU Card provides its payment platform through "the Club Swan Partners membership program."[7] NASDAC "entered into a business relationship with AU Card," believing AU Card "could provide a single vendor credit card" compliant with all necessary regulations.[8]

While developing a business relationship with AU Card, NASDAC communicated with Neil Weeks, John Kerr, and Christopher Scanlon.[9] AU Card representatives informed NASDAC that Scanlon owned AU Card, Club Swan, and Club Swan Partners.[10] Weeks and Kerr informed NASDAC that AU Card "would take Club Swan's existing platform and simply change the

---

[4] The following facts are set forth as alleged in the Complaint and the parties briefing, including the attached exhibits, with any factual disputes resolved in NASDAC's favor. *See Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010) ("Without discovery and a record on jurisdiction, this court must resolve all factual disputes in the plaintiff's favor. Where the plaintiff's factual allegations are not directly controverted, they are taken as true for purposes of determining jurisdiction.") (citations and alteration omitted); *Bell Helicopter Textrox, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1295 (10th Cir. 2004) ("When the evidence presented on a motion to dismiss consists of affidavits and other written materials the plaintiff need only make prima facie showing. The district court must resolve all factual disputes in favor of the plaintiff.") (citation omitted); *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 90 (10th Cir. 2012) ("We accept as true any allegations in the complaint not contradicted by the defendant's affidavits, and resolve any factual disputes in the plaintiff's favor.").

[5] Dkt. 1, *Complaint* ¶¶ 23, 29, 38.

[6] *Id.* ¶¶ 24–29, 48.

[7] Dkt. 28-1, Letter of Intent.

[8] *Id.* ¶¶ 29–31.

[9] *Id.* ¶¶ 32, 41–42.

[10] *Id.* ¶ 47.

branding" to NASDAC's branding, including NASDAC's logos and color scheme.[11] On January 28, 2023, NASDAC entered into a Letter of Intent (LOI) "regarding the Club Swan Partners program," with Greg Jones signing on behalf of NASDAC and Neil Weeks signing on behalf of AU Card.[12]

The LOI stated NASDAC would provide "Know Your Business (KYB) informat[ion] to Club Swan," AU Card would prepare a Club Swan Partners Program Agreement (the Agreement), and AU Card would organize technical teams to "prepare for implementation of the Program."[13] The LOI further provided AU Card would invoice NASDAC for $225,000, which would be refunded "if NASDAC [did] not satisfy the KYB requirements, or if the . . . Agreement [was] not executed between" the parties within 90 days from the signature date on the LOI.[14]

NASDAC provided the KYB information and paid AU Card $200,000, and on February 28, 2023, AU Card sent NASDAC the Agreement.[15] The Agreement contained new, inconsistent, and "significant material terms that had not been discussed, explained, or agreed upon before."[16] NASDAC subsequently communicated with Neil Weeks and John Kerr regarding the disputed provisions, but the parties "were unable to come to an agreement regarding the terms of the Agreement."[17] AU Card never delivered a payment platform or "any work product" to NASDAC, and the parties never signed the Agreement.[18] NASDAC requested

---

[11] *Id.* ¶ 46.
[12] *Id.* ¶ 49.
[13] *Id.* ¶¶ 50–52.
[14] *Id.* ¶¶ 53–54.
[15] *Id.* ¶ 58–63.
[16] *Id.* ¶¶ 56, 64.
[17] *Id.* ¶ 57.
[18] *Id.* ¶¶ 65, 76.

multiple times that AU Card refund the $200,000 NASDAC paid to AU Card,[19] but NASDAC never received any work product from AU Card, "any evidence of the alleged work performed" by AU Card, or a refund of the $200,000.[20] On August 28, 2023, NASDAC and Jones Broadcasting filed a Complaint against AU Card, AU Card LLC, PMA Media Group, Inc. (PMA), Club Swan, Club Swan, LLC, Club Swan Partners, Aurae Lifestyle, Reiner Vanooteghem, Christopher Scanlon, Neil Weeks, and John Kerr for, among other things, breach of contract and alter ego.[21] To support their alter ego cause of action, Plaintiffs alleged Scanlon "operated, owned, and controlled all Defendant entities," the "AU Card Defendants [acted] as pass-through entities for the benefit of Scanlon and other AU Card Defendants," the lines were "blurred [] between the companies," and the AU Card Defendants and Scanlon "comingled assets and accounts."[22]

## JURISDICTIONAL FACTS AND PROCEDURAL HISTORY

NASDAC is a limited liability company organized in the United Arab Emirates "with its principal place of business in McDonough, Georgia, United States" and often does business as Jones Broadcasting.[23] Jones Broadcasting is a limited liability company registered in Wyoming.[24] Greg Jones lives in McDonough, Georgia, United States and is the sole member of both NASDAC and Jones Broadcasting.[25]

---

[19] *Id.* ¶¶ 68–69, 71, 73.

[20] *Id.* ¶¶ 66, 77, 79.

[21] *See generally*, *id.*

[22] *Id.* ¶¶ 102–105, 108.

[23] *Id.* ¶ 1.

[24] *Id.* ¶¶ 2–3.

[25] Dkt. 33, *Plaintiff's Memorandum in Opposition to Motion to Dismiss* (*Opposition to Motion to Dismiss*) ¶¶ 1–3.

4

Plaintiffs allege AU Card is "a limited company located in London, England."[26] AU Card LLC is the "immediate holding company and 100% owner" of AU Card, "acts as a pass-through company" for Club Swan and the other Defendant entities, and has its principal place of business in Utah.[27] Plaintiffs further allege AU Card enters into contracts "for the benefit of" Aurae Lifestyle, Club Swan Partners, and Club Swan.[28] According to Plaintiffs, PMA, a Delaware corporation that maintains its principal place of business in Lehi, Utah, "is the ultimate holding company of all Defendant entities."[29] Plaintiffs claim Scanlon is the founder and chief executive officer of AU Card, AU Card LLC, Aurae Lifestyle, Club Swan Partners, Club Swan, and PMA, and Scanlon is a resident of Utah and the United Kingdom.[30] They also allege Scanlon owns PMA and AU Card LLC, and the other Defendant entities are owned by Scanlon, PMA, or AU Card LLC.[31] Vanooteghem resides in Tennessee, Weeks resides in Australia, and Kerr resides in England.[32]

On April 19, 2024, the entity Defendants and Scanlon (collectively, Defendants) filed a Motion to Dismiss, asserting this court lacks subject matter and personal jurisdiction.[33]

---

[26] *Complaint*, ¶ 6.

[27] *Id.* ¶¶ 7–8.

[28] *Id.* ¶ 8.

[29] *Id.* ¶ 9.

[30] *Id.* ¶ 11.

[31] *Id.* ¶¶ 12–13.

[32] *Id.* ¶¶ 14–16.

[33] *See Motion to Dismiss*. Defendants filed their Motion to Dismiss only on behalf of the entity Defendants and Scanlon. Accordingly, the court only discusses disputed facts related to Defendants Vanooteghem, Weeks, and Kerr insofar as they relate to the jurisdictional issues raised by the entity Defendants and Scanlon.

In response, Plaintiffs filed an Opposition to the Motion to Dismiss,[34] a Motion for Jurisdictional Discovery,[35] and a Motion to Amend the Complaint.[36] In their Motion for Discovery, Plaintiffs request permission to conduct jurisdictional discovery "to resolve factual disputes relevant to determining whether jurisdiction exists over Defendant[s] in this forum."[37] Plaintiffs contend Defendants put forth new relevant facts "when countering jurisdiction" and "[D]efendants hold all information relevant to determining jurisdiction."[38] These motions are ripe for review.[39]

## ANALYSIS

Defendants set forth the following facts to support their jurisdiction arguments: (1) AU Card is a United Kingdom entity; (2) NASDAC is "an expired Dubai entity"; (3) AU Card does not have an office or employees in Utah and does not do business in Utah; (4) Weeks and Kerr are both residents of Australia; (5) AU Card "believes that the LOI was negotiated from Australia"; (6) Scanlon is not a resident of Utah and does not own property in Utah; (7) Scanlon is the "ultimate beneficial owner" of AU Card, but Scanlon has "no involvement in the management of the company"; (8) Club Swan Partners is not a legal entity and "appears to refer

---

[34] *Opposition to Motion to Dismiss*.

[35] *See generally, Motion for Discovery*.

[36] *See generally, Motion to Amend*.

[37] *Motion for Discovery* at 1. In the Motion to Amend, Plaintiffs seek to "remove[] the two DBA Defendants — Aurae Lifestyle and Club Swan Partners as Defendants." Accordingly, the court does not address any jurisdictional discovery issues regarding Aurae Lifestyle and Club Swan Partners.

[38] *Id.* at 2.

[39] Dkt. 57, *Reply to Motion to Dismiss and Memorandum in Support* (*Reply to Motion to Dismiss*); Dkt. 58, *Memorandum in Opposition to Motion for Discovery and Memorandum in Support* (*Opposition to Motion for Discovery*); Dkt. 59, *Memorandum in Opposition to Motion to Amend/Correct and Memorandum in Support* (*Opposition to Motion to Amend*); Dkt. 65, *Reply to Response to Motion to Amend/Correct and Memorandum in Support* (*Reply to Motion to Amend*); Dkt. 66, *Reply to Response to Motion for Discovery and Memorandum in Support* (*Reply to Motion for Discovery*); Dkt. 67, *Objections to Reply to Motion for Discovery*.

to the trademark 'Club Swan'"; (9) Aurae Lifestyle is a trademark, not a legal entity; and (10) the Complaint does not provide any information regarding Jones' citizenship.[40]

Relying on these facts, Defendants argue the court lacks subject matter jurisdiction because there is no complete diversity between the parties as required by 28 U.S.C.A. § 1332.[41] Specifically, Defendants argue (1) the Complaint fails to provide the citizenship of Jones, who is the owner of both Plaintiffs; (2) the dispute is between two foreign entities; (3) Plaintiffs cannot show the parties are citizens of a state and citizens of a foreign state; and (4) Plaintiffs cannot show "this matter involves citizens of different states in which citizens of a foreign state are additional parties."[42]  Defendants also argue the court lacks personal jurisdiction because AU Card is a United Kingdom company that does not do business in Utah, and Defendants do not have sufficient minimum contacts with Utah.[43]  In response to Defendants' challenges to subject matter and personal jurisdiction, Plaintiffs seek to cure any jurisdictional pleading deficiencies through discovery.[44]

I.  **Legal Standard.**

Trial courts have broad discretion in deciding whether to grant jurisdictional discovery.[45] "When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed

---

[40] *Id.* ¶¶ 10–31.

[41] *Id.* ¶¶ 6–10.  Defendants also argue the Complaint fails to state claims due to various issues including the governing law, the economic loss rule, the lack of specificity, and the legal status of various entities.  Because this order concerns the threshold issue of jurisdiction, the court does not address Defendants' other arguments.

[42] *Id.*

[43] *Id.* ¶¶ 10–16.

[44] *See generally Motion to Dismiss; Motion for Discovery.*

[45] *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1188–89 (10th Cir. 2010) ("[I]n the context of a 12(b)(1) motion, '[w]e give the district court much room to shape discovery . . . .'" (alteration in original)); *see also Budde v. Ling-Temco-Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975) ("When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion.  The trial court, however, is vested with broad discretion and should not be reversed unless discretion is abused.").

discovery on the factual issues raised by that motion."[46] Further, "a refusal to grant discovery constitutes an abuse of discretion if the denial results in prejudice to a litigant," and prejudice is present when "pertinent facts bearing on the question of jurisdiction are controverted" or when "a more satisfactory showing of the facts is necessary."[47] Resolving all factual disputes in Plaintiffs' favor,[48] the court concludes it has subject matter jurisdiction over the action. However, whether the court has personal jurisdiction is unclear and the parties dispute pertinent facts regarding personal jurisdiction. Thus, to deny jurisdictional discovery would prejudice Plaintiffs.[49]

## II. The Court Has Subject Matter Jurisdiction.

Diversity jurisdiction exists when the matter in controversy exceeds $75,000 and there is complete diversity between the parties.[50] "[D]iversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff."[51] Corporations are deemed citizens of "every State and foreign state by which it has been incorporated and . . . where it has its principal place of business."[52] The citizenship of a non-corporate entity is based on the

---

[46] *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002) (citation omitted).

[47] *Id.* (citations omitted).

[48] *See Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010) ("Without discovery and a record on jurisdiction, this court must resolve all factual disputes in the plaintiff's favor. Where the plaintiff's factual allegations are not directly controverted, they are taken as true for purposes of determining jurisdiction." (citations and alteration omitted)); *Bell Helicopter Textrox, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1295 (10th Cir. 2004) ("When the evidence presented on a motion to dismiss consists of affidavits and other written materials the plaintiff need only make prima facie showing. The district court must resolve all factual disputes in favor of the plaintiff.") (citation omitted); *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 90 (10th Cir. 2012) ("We accept as true any allegations in the complaint not contradicted by the defendant's affidavits, and resolve any factual disputes in the plaintiff's favor.").

[49] *See id.*

[50] *See* 28 U.S.C.A. § 1332; *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978). The parties do not dispute the amount in controversy requirement is satisfied based on the allegations in the Complaint.

[51] *Owen Equip. & Erection Co.*, 437 U.S. at 373 (emphasis in the original).

[52] 28 U.S.C.A. § 1332(c)(1).

citizenship of all its members.[53] The information before the court is sufficient to establish complete diversity between each Plaintiff and each Defendant.

Greg Jones is a "resident and citizen of McDonough, Georgia."[54] NASDAC and Jones Broadcasting are limited liability companies, and Greg Jones is the sole member of both.[55] Because citizenship of unincorporated entities is determined by the citizenship of its members,[56] both NASDAC and Jones Broadcasting are deemed citizens of the State of Georgia.

Complete diversity exists between the Georgia Plaintiffs and Club Swan, LLC, AU Card LLC, and PMA as these Defendants are citizens of Utah.[57] Complete diversity also exists between Plaintiffs and AU Card. AU Card is a United Kingdom limited company incorporated in the United Kingdom.[58] And because United Kingdom limited companies are treated as corporations for purposes of diversity jurisdiction,[59] AU Card is deemed a citizen of the United Kingdom. The court has diversity jurisdiction over actions between "citizens of a State and citizens … of a foreign state."[60] Moreover, according to the parties, Scanlon is either a resident

---

[53] *See Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1234 (10th Cir. 2015); *Conagra Foods, Inc. v. Americold Logistics, LLC*, 776 F.3d 1175, 1180 (10th Cir. 2015) (concluding Supreme Court precedent "dictates that the citizenship of any non-corporate artificial entity is determined by considering all of the entity's members").

[54] *Opposition to Motion to Dismiss* ¶ 1.

[55] *Id.* ¶¶ 1–3.

[56] *See Conagra Foods*, 776 F.3d at 1180.

[57] *See Opposition to Motion to Dismiss*, Ex. B (listing PMA's corporate address as located in Lehi, Utah); *id.*, Ex. A, Ex. F (listing PMA as AU Card LLC's sole member and registered agent), *id.*, Ex. G (including the certificate of organization for Club Swan, LLC as a Utah limited liability company and listing Scanlon as Club Swan, LLC's sole member and registered agent with an address in Utah).

[58] *See Motion to Dismiss*, Ex. 2.

[59] *Christian v. OneM Commc'ns Ltd.*, No. 22-CV-00024-NDF, 2023 WL 7385609, at *1 (D. Wyo. Sept. 20, 2023) (concluding a United Kingdom private limited company incorporated in the United Kingdom is equivalent to a United States corporation for diversity purposes); *SNC-Lavalin Constructors Inc. v. Tokio Marine Kiln Ins. Ltd.*, No. GJH-19-1510, 2021 WL 2550505, at *6 (D. Md. June 21, 2021) ("[T]he Court finds U.K. private limited companies . . . are comparable to U.S. corporations for the purposes of diversity jurisdiction."); *Merchants' Cotton-Press & Storage Co. v. Ins. Co. of N. Am.*, 151 U.S. 368, 374–75 (1894) (considering two United Kingdom limited companies as corporations for jurisdiction purposes).

[60] 28 U.S.C.A. § 1332(a)(2).

of the United Kingdom or the state of Utah.[61] The alleged facts establish complete diversity between the Gorgia Plaintiffs and Scanlon, regardless of whether Scanlon is a citizen of the United Kingdom or Utah.[62]

### III.     There are Factual Disputes Regarding Personal Jurisdiction.

In addition to subject matter jurisdiction, the court must also have personal jurisdiction over Defendants to adjudicate the case.[63] "To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment."[64] Utah law provides jurisdiction be applied "over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment of the United States Constitution."[65] Thus, the personal jurisdiction analysis is "a single due process inquiry."[66]

If a defendant is not a citizen of the forum, "due process requires only that … [the defendant] have certain minimum contacts with it such that maintenance of the suit does not

---

[61] *See Motion to Dismiss* at ¶¶ 23, 27; *Complaint* at ¶ 11.

[62] *See* 28 U.S.C.A. § 1332(a) (stating district courts have original jurisdiction "where the matter in controversy exceeds … $75,000 … and is between citizens of different States [or] citizens of a State and a citizens or subjects of a foreign state).

[63] *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 575 (1999) ("Personal jurisdiction, too, is an essential element of district court jurisdiction, without which the court is powerless to proceed to an adjudication.").

[64] *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999) (citation omitted).

[65] Utah Code § 78B-3-201(3).

[66] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017); *see also Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001) (stating "because [the state's] long-arm statute is coextensive with the limits of due process, the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process").

offend traditional notions of fair play and substantial justice."[67] The "minimum contacts standard" may be established through general jurisdiction or specific jurisdiction.[68] The court may assert general personal jurisdiction if the defendant maintains affiliations "so continuous and systematic as to render it essentially at home in the forum State."[69] The court has specific personal jurisdiction over a nonresident defendant where the "alleged injury arises out of or relates to actions by the defendant . . . that are purposefully directed toward forum residents, and where jurisdiction would not otherwise offend fair play and substantial justice."[70] Additionally, a subsidiary's jurisdictional contacts may be imputed to a parent company if the subsidiary is "an agent of the parent or . . . the two companies are so intertwined as to be the other's alter ego."[71] The Tenth Circuit has emphasized "whether a non-resident defendant has the requisite minimum contacts with the forum state to establish persona[l] jurisdiction must be decided on the particular facts of each case."[72] Relatedly, "[i]f a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the

---

[67] *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted); *see also Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004) ("[A] court may exercise personal jurisdiction over a nonresident defendant only so long as there exist minimum contacts between the defendant and the forum state.") (internal quotation marks and citation omitted).

[68] *Benton*, 375 F.3d at 1075.

[69] *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal quotation marks and citation omitted); *see also Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414–415 (1984).

[70] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 463 (1985) (internal quotation marks omitted).

[71] *Daimler*, 571 U.S. at 134–35; *see also Fugal v. Wright Med. Grp., Inc.*, 2:18-CV-0367, 2019 WL 1406613, at *5 (D. Utah Mar. 28, 2019) ("A parent corporation is not subject to personal jurisdiction in a forum solely based on the subsidiary's contacts with the forum absent an allegation that either 1) the subsidiary was an agent of the parent or 2) that the two companies are so intertwined as to be the other's alter ego."); *see also Assoc. Elec. & Gas Ins. Serv. Ltd. v. Am. Int'l Grp., Inc.*, 2:11-CV-368, 2012 WL 256146, at *2 (D. Utah Jan. 27, 2012) (analyzing a parent/subsidiary relationship for alter ego or agency to establish personal jurisdiction); *Budde*, 511 F.2d at 1036 (analyzing alter ego and agency theories to determine jurisdiction).

[72] *Benton*, 375 F.3d at 1076 (internal alteration and citation omitted).

party and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained."[73]

The Federal Circuit addressed a similar personal jurisdictional discovery issue involving interrelated foreign companies in *Nuance Communications, Inc. v. Abbyy Software House*. Nuance Communications, Inc. (Nuance) filed a complaint against Abbyy USA Software House (Abbyy USA), Abbyy Production, and Abbyy Software (collectively, the Abbyy Defendants) for alleged patent infringement.[74] Abbyy USA and Abbyy Production, a Russian Federation corporation, were both wholly-owned subsidiaries of Abbyy Software, a Republic of Cyprus corporation.[75] The defendants filed a motion to dismiss Abbyy Production and Abbyy Software for lack of personal jurisdiction and improper service with accompanying declarations and previously-unproduced documents.[76] Nuance requested a continuance to conduct limited jurisdictional discovery, but the district court dismissed the case for lack of jurisdiction without ruling on Nuance's request for a continuance or providing a jurisdictional evidentiary hearing.[77] Nuance appealed.[78]

Regarding personal jurisdiction, the Court concluded Abbyy Production had sufficient contacts for personal jurisdiction due to, among other things, the agreement between the "commonly owned sister companies operating under a consolidated Global Management Team," Abbyy Production's distribution of software in the United States, the extent of its United States

---

[73] *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d. Cir. 2003) (internal quotation marks and citation omitted); *see also Reg'l Airline Mgmt. Sys., Inc. v. Airports USA, Inc.*, No. 06-CV-01758-WYD-CBS, 2007 WL 1059012, at *6 (D. Colo. Apr. 4, 2007) (quoting *Toys "R" Us*, 318 F.3d at 456).

[74] *Nuance*, 626 F.3d at 1228.

[75] *Id*.

[76] *Id*.

[77] *Id*.

[78] *Id*. at 1227.

market percentage, and a statement Abbyy Production made regarding its goal for activities in the United States.[79] The Court also determined the record was insufficient to conclude the district court had personal jurisdiction over Abbyy Software because the extent of its involvement in the activities of Abbyy USA and Abbyy Production was less certain.[80] However, the Court held the district court should have permitted jurisdictional discovery because the limited record "support[ed] Nuance's contention that Abbyy Software function[ed] as more than a holding company."[81] Specifically, Abbyy Software's website "portray[ed] Abbyy as a single company with offices in many countries, including the United States," the CEO was the founder of all of the Abbyy Defendants and chairman of the management team, and the Abbyy Defendants' promotion of sales in California.[82] The Court concluded that while these facts did not by themselves establish a prima facie case for personal jurisdiction, Nuance's request for jurisdictional discovery was not "based on a mere hunch."[83] Rather, the incomplete record "support[ed] the need for additional discovery to determine the merits of personal jurisdiction" and "[d]iscovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted."[84]

Like *Nuance*, this court has personal jurisdiction over some defendants, but the limited record before the court is insufficient to determine whether it has personal jurisdiction over others. The court concludes it has personal jurisdiction over AU Card LLC, PMA, and Club

---

[79] *Id*. at 1230–34.

[80] *Id*. at 1234–35.

[81] *Id*. at 1235–36.

[82] *Id*. at 1235.

[83] *Id*. at 1236.

[84] *Id*. (alteration and citation omitted).

Swan, LLC because these Defendants are citizens of Utah, located in Utah.[85] Such "continuous and systematic general business contacts between a party and the forum" are sufficient to establish general personal jurisdiction.[86]

However, there are factual disputes pertaining to the court's personal jurisdiction over AU Card and Scanlon. Plaintiffs allege Defendants are alter egos of each other.[87] If true, the jurisdictional contacts of AU Card LLC, Club Swan, LLC, PMA, and Scanlon may be imputed to AU Card depending on the nature of the relationship between Defendants.[88] Additionally, the extent of AU Card's involvement with the other Defendants is unclear from the limited information before the court. Plaintiffs stress the interrelatedness of the entity Defendants and Scanlon, representations made by Weeks and Kerr regarding the Defendants' relationships with each other and Scanlon, and Defendants' contacts with Utah to support their alter ego allegations.[89] Specifically, Plaintiffs contend Scanlon is a resident of Utah and point to the registration documents for AU Card LLC, PMA, and Club Swan, LLC all of which either list or

---

[85] *See Opposition to Motion to Dismiss*, Ex. B (listing PMA's corporate address as located in Lehi, Utah), Ex. A, Ex. F (listing PMA as AU Card LLC's sole member and registered agent), Ex. G (including the certificate or organization for Club Swan, LLC as a Utah limited liability company and listing Scanlon as Club Swan, LLC's sole member and registered agent with an address in Utah).

[86] *See Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1281 (10th Cir. 2020); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ("A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State.") (citation omitted).

[87] *Complaint* ¶¶ 13, 101–111.

[88] *Daimler*, 571 U.S. at 134–35; *see also Fugal v. Wright Med. Grp., Inc.*, 2:18-CV-0367, 2019 WL 1406613, at *5 (D. Utah Mar. 28, 2019) ("A parent corporation is not subject to personal jurisdiction in a forum solely based on the subsidiary's contacts with the forum absent an allegation that either 1) the subsidiary was an agent of the parent or 2) that the two companies are so intertwined as to be the other's alter ego."); *see also Assoc. Elec. & Gas Ins. Serv. Ltd. v. Am. Int'l Grp., Inc.*, 2:11-CV-368, 2012 WL 256146, at *2 (D. Utah Jan. 27, 2012) (analyzing a parent/subsidiary relationship for alter ego or agency to establish personal jurisdiction); *Budde*, 511 F.2d at 1036 (analyzing alter ego and agency theories to determine jurisdiction).

[89] *Opposition to Motion to Dismiss* at 1–2, 7, 12–13.

trace back to Scanlon as the registered agent with a Utah address.[90] Plaintiffs also refer to Club Swan, LLC's Certificate of Organization, which lists Scanlon with a Utah address as the registered agent for the company.[91]

Defendants acknowledge AU Card is a "holding company"[92] and AU Card LLC and Club Swan, LLC are subsidiaries of AU Card,[93] but contend AU Card is not registered to do business in Utah, does not maintain an office in Utah, does not have employees in Utah, and does not have a leadership team in Utah (or the United States).[94] Further, Defendants also acknowledge Scanlon "is the ultimate beneficial owner" of AU Card, but maintain Scanlon is not a Utah resident or domiciliary with "no involvement in the management of the company."[95] But these arguments underscore the factual dispute surrounding Plaintiffs' alter ego theory. And aside from presenting these arguments, Defendants do not otherwise provide any information regarding the ownership or operations of AU Card.[96]

Here, Plaintiffs' alter ego theory of liability presents factual disputes surrounding the exercise of personal jurisdiction over AU Card. Plaintiffs have presented "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts" between all Defendants and Utah.[97] As such, Plaintiffs "should be allowed discovery on the[se]

---

[90] *Id.* ¶¶ 4–7; *id.*, Ex. B (listing PMA's corporate address as located in Lehi, Utah); Ex. A, Ex. F (listing PMA as AU Card LLC's sole member and registered agent), Ex. G (including the certificate or organization for Club Swan, LLC as a Utah limited liability company and listing Scanlon as Club Swan, LLC's sole member and registered agent with an address in Utah).

[91] *Id.*, Ex. G.

[92] *Motion to Dismiss* at 14.

[93] *Id.* at 2.

[94] *Id.* ¶¶ 13–15, 18.

[95] *Id.* ¶¶ 27–28.

[96] *See generally Motion to Dismiss*; *Reply to Motion to Dismiss*; *Opposition to Motion for Discovery*.

[97] *Toys "R" Us, Inc.*, 318 F.3d at 456; *see also Reg'l Airline Mgmt. Sys., Inc.*, 2007 WL 1059012, at *6 (quoting *Toys "R" Us, Inc.*, 318 F.3d at 456).

factual issues."[98]  Defendants contend Plaintiffs' request for discovery "appears to be a long and expensive fishing expedition."[99]  But, "[t]he condemnation of [Plaintiffs'] proposed further activities as a 'fishing expedition' [is] unwarranted.  When the fish is identified, and the question is whether it is in the pond, we know no reason to deny a plaintiff the customary license."[100]  Accordingly, the court concludes granting jurisdictional discovery is appropriate.[101]

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Jurisdictional Discovery[102] is GRANTED.  The parties must meet and confer regarding the scope and duration of the jurisdictional discovery.  Within 21 days of this Order, the parties must submit a stipulated scheduling order or competing proposed orders with briefing not to exceed 10 pages in support of their respective positions and/or objections.  In light of this ruling, Defendants' Motion to Dismiss[103] and Plaintiffs' Motion to Amend[104] are DENIED without prejudice.  After jurisdictional discovery is completed, the parties may refile these motions should they wish to do so within 30 days of the jurisdictional discovery deadline.

---

[98] *Budde*, 511 F.2d at 1035.

[99] *Opposition to Discovery* at 2.

[100] *Surpitski v. Hughes-Keenan Corp.*, 362 F.2d 254, 255–56 (1st Cir. 1966).

[101] *See Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 103 (10th Cir. 2012) ("A refusal to grant discovery constitutes an abuse of discretion if the denial results in prejudice to a litigant." (alteration and emphasis omitted); *see also Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731 (11th Cir. 1982) ("Plaintiff must be given an opportunity to develop facts sufficient to support a determination on the issue of jurisdiction. … [T]he rules entitle a plaintiff to elicit material through material through discovery before a claim may be dismissed for lack of jurisdiction.") (internal quotation marks omitted).

[102] Dkt. 35.

[103] Dkt. 28, *Motion to Dismiss*.

[104] Dkt. 50, *Motion to Amend Complaint.*

SO ORDERED this 31st day of December 2024.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge